IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ASIAN-AMERICAN LICENSED** | : | |
| **BEVERAGE ASSOC., et al.,** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | CIVIL ACTION NO. 1:05-CV-2135 |
| v. | : | |
| | : | (Judge Kane) |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM AND ORDER**

I.   Introduction

The City of Philadelphia is host to approximately 2400 businesses that are licensed by the Pennsylvania Liquor Control Board ("LCB"). Among these are licensed restaurants and eating establishments with "R" and "E" licenses that entitle their holders to sell beer and malt beverages for consumption off the licensed premises. In the parlance of liquor licensing, these establishments are known as "stop and go's." Among the operators of "stop and go's" in Philadelphia are the approximately 400 members of the Asian-American Licensed Beverage Association ("AALBA"). The AALBA, along with six individual Asian-American owned businesses in Philadelphia, bring this action to enjoin the implementation of legislative changes to licensing laws that impact their businesses. Defendants are the Commonwealth of Pennsylvania, the Pennsylvania Liquor Control Board ("LCB"), and the three current board members of the LCB. The City of Philadelphia has intervened as a Defendant.

Plaintiffs brought this action by filing a Petition to Review in the Commonwealth Court of

Pennsylvania. The Petition alleged that Sections 4 and 6 of Act 39 of 2005, which amended Sections 407 and 449 of the Pennsylvania Liquor Code, codified as 47 P.S. § 4-407, 4-442(a), and Section 479 of the Pennsylvania Liquor Code, codified as 47 P.S. § 4-479, are in conflict with other provisions of the Pennsylvania Liquor Code and violate the Pennsylvania Constitution and the Fourteenth Amendment of the United States Constitution. Following an expedited hearing on October 6, 2005, the Commonwealth Court issued an Order temporarily enjoining the enforcement of Act 39. On October 19, 2005, Defendants removed the action to this Court. On October 21, 2005, Plaintiffs filed a Motion for a Temporary Restraining Order and Preliminary Injunction. (Doc. No. 4.) On October 25, 2005, this Court heard argument on Plaintiffs' Motion for a Temporary Restraining Order and denied that motion as moot, finding that the order of the Commonwealth Court remained in effect pursuant to 28 U.S.C. § 1450.[1] The same day, the City of Philadelphia filed an unopposed motion to intervene and the Court granted the motion pursuant to Federal Rule of Civil Procedure 24(b)(2). (Doc. No. 17.)

On Friday, October 28, 2005, this Court heard testimony on Plaintiffs' motion for a Preliminary Injunction. Argument on the motion was had the afternoon of Monday, October 31, 2005. Immediately prior to making their argument, Plaintiffs advised the Court and parties that it would be filing an Amended Complaint, adding a sixth claim alleging violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by the City of Philadelphia. (Doc. No.

---

[1] Pursuant to 28 U.S.C. § 1450, "[w]henever any action is removed from a state court to a district court of the United States . . . [a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."

26.) The same day, this Court filed a modified Temporary Restraining Order, dissolving the Commonwealth Court's order to the extent that it enjoins the enforcement of § 4-479 of the Pennsylvania Liquor Code, and to the extent that it enjoins the LCB from accepting and processing applications for special permits. (Doc. No. 31.)

## II.     Findings of Fact

Historically, the City of Philadelphia has experienced a high rate of criminal activity in the areas of the city where "stop and go's" operate. In July, 2005, the Pennsylvania General Assembly passed and the Governor signed an omnibus amendment to the Pennsylvania Liquor Code, Act 39 of 2005. Act 39 addresses, inter alia, the law enforcement problems attendant to these businesses and Philadelphia's need to better ensure the public health, safety, and welfare in areas of the City where "stop and go's" operate. Effective September 6, 2005, Sections 4 and 6 of Act 39 create an added layer of regulatory oversight for retailers in Cities of the First Class, imposing a requirement that licensees who sell beer for off-premises consumption in Cities of the First Class first obtain permits from the City as a prerequisite to licensing by the LCB. Sections 4 and 6 of Act 39 provide that after October 31, 2005, the LCB shall not license any retailer who has not first obtained a permit from the city. The City is authorized to consider the issuance of a permit, weighing its effect on the "welfare, health, peace and morals of the city or its residents." Section 4 of Act 39, 47 P.S. § 4-407(b)(4) (2005). The City is afforded forty-five days to consider a permit application, and any application not acted on within that time is deemed to be approved by the City. Section 6 of Act 39, 47 P.S. § 4-442(a)(5) (2005). Appeal from the action of City Council is to the Court of Common Pleas in the county in which the city is located. Section 6 of Act 39, 47 P.S. § 4-407(a)(4).

The requirement for a City permit was added to the original omnibus amendment to the Liquor Code through amendment of the House Liquor Control Board Committee on June 22, 2005, without remarks, without public notice, and without the opportunity for public debate.  The Philadelphia City Council learned of this significant change to the licensing scheme one week after its enactment, leaving the city little time to establish procedures before the deadlines established in the Act.

The City responded by adopting temporary and then permanent "Rules Governing Requests for Approval of Permits to Sell Malt or Brewed Beverages for Consumption Off Premises in Philadelphia" (Pl. Ex. 5.)  These Rules provide for the application for a City license, the posting of premises, the filing of protests, and for hearings related to the issuance of these permits.  The Rules provide for an administrative hearing in the event that any person protests a permit application.  Members of City Council are authorized to file protests.  When hearings are required, they are conducted by Hearing Examiners who recommend to the City Council that a permit be approved or disapproved.  Permits are finally approved or disapproved by vote of City Council.  City Council members who have filed protests against a permit routinely recuse from the vote on the approval or disapproval of that particular permit.

Pursuant to these Rules, as of the date this matter was heard, the City had received 781 permit applications and approved 546 of those applications as without protest.  Of the 235 applications remaining, 138 received protests, and 97 applications are still within the 14-day protest period.  In the 138 applications subject to protests, 26 protests were withdrawn and the permits approved.  Twenty-eight of the remaining 138 are pending, and 34 permits were disapproved by City Council.  Of the 781 applications filed with the City of Philadelphia for Act 39 permits, 184 are AALBA members.  Of the

127 applicants noticed for Act 39 hearings, 97 are AALBA members. Twenty-nine of the 34 permit applications disapproved by City Council were submitted by AALBA members.

The abbreviated review period and lack of notice provided by the General Assembly has resulted in deficiencies in the processing of Act 39 permit applications, and a loss of confidence by Plaintiffs that the law is being fairly administered. Hearings are scheduled soon after applicants are notified of a protest, leaving them little time to prepare. The identity of the protester is not revealed until the time of the hearing, also hampering an applicant's ability to prepare. Members of City Council, and at least one city employee, routinely serve as the protester. Hearings for permit applicants represented by the same counsel are set at conflicting times, so that some applicants are forced to appear unrepresented or to seek new counsel on short notice. Confusion exists over the ability of hearing examiners to grant continuances requested by applicants. When a permit is denied, official written notification of that fact is not immediately forthcoming, creating confusion regarding when the time for appeal to the Court of Common Pleas commences.

These anomalies have created the specter of unequal enforcement. The City's own statistics, reflecting a disproportionately high number of hearings and permit denials respecting Asian-American applicants, reinforces this perception. Moreover, the decisions of City Council in particular cases raises concern that the Council's decisions are arbitrary and not based on substantial evidence. Although Defendants were afforded no opportunity to refute their claims, the Court heard testimony of individual Asian-American licensees that called into question the soundness of City Council's decision on their permits. These witnesses included: Adam Xu, Chairman of AALBA; Hung Ngo, owner of Haverford Deli; Chang Woo, owner of Conley Deli; Christopher Van Aun, owner of 63 CVA, Inc.; Sue Mae

Tang, owner of Kitchen 89 Deli; and Yen Tran, Secretary/Treasurer of AALBA.[2]

Plaintiffs suffer adverse impact from the application of Act 39. Retailers under the Pennsylvania Liquor Code are relicensed bi-annually on a rotating basis, depending on their geographic location within the Commonwealth. This cycle holds that licensees in the City of Philadelphia be relicensed in the year 2005. Unless Plaintiffs receive a City permit necessary to obtain an LCB permit for off-premises sales, Plaintiffs will be able to sell beer and malt beverages only to patrons who consume these beverages on the premises. The application to some Plaintiffs will result in reduced sales of beer and malt beverages and reduced income.

### III.     Discussion and Conclusions of Law

#### A.     Legal Standard for Injunctive Relief

The grant of injunctive relief under Federal Rule of Civil Procedure Rule 65(a) "is an 'extraordinary remedy, which should be granted only in limited circumstances." <u>Instant Air Freight Co. v. C.F. Air Freight, Inc.</u>, 882 F.2d 797, 800 (3d Cir. 1989) (internal citation omitted). Accordingly, Plaintiffs' burden to demonstrate that they are entitled to relief is substantial. <u>United States v. City of</u>

---

[2]The Court afforded Plaintiff broad berth to establish their facial challenge to the constitutionality of the Act, and admitted testimony regarding Philadelphia's implementation of the Act for this purpose. Defendants object to granting injunctive relief based on a finding that Act 39 is unconstitutional as applied. Defendants had no notice of this claim until the evidentiary portion of the hearing concluded, and thus presented no evidence to refute it. The Court agrees. The original Petition for Review alleges unequal treatment by the City of Philadelphia yet it brings no claim against the City. Plaintiffs declined to name Philadelphia as a party even when urged to do so by the Court. Philadelphia intervened prior to the hearing. Nevertheless, Plaintiff elected not to allege unequal treatment as applied until after the evidentiary hearing on their facial challenge had concluded. Now, at the post-hearing stage, consideration of Plaintiffs' new claim without giving City a chance to respond would grossly disadvantage the City and cause the Court to issue injunctive relief on less than a full record.

Philadelphia, 644 F.2d 187, 191 n.1 (3d Cir. 1980); First Health Group Corp. v. Nat'l Prescriptions Adm'rs, Inc., 155 F. Supp. 2d 194, 216 (M.D. Pa. 2001).

The following four factors govern a district court's evaluation of whether to issue a preliminary injunction: (1) whether the movant has demonstrated a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by the denial of the requested relief; (3) whether granting the preliminary relief will result in greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. Am. Civil Liberties Union of New Jersey v. Black Horse Pike Regional Bd. of Educ., 84 F.3d 1471, 1477 n.2 (3d Cir. 1996) (en banc). "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm that cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." Instant Air Freight, 882 F.2d 797, 801 (3d Cir. 1989) (internal citations omitted). The United States Supreme Court has clarified irreparable harm as follows:

> It seems clear that the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury . . . . The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

Sampson v. Murray, 415 U.S. 61, 90 (1964) (internal quotations omitted). District courts should only grant injunctive relief after consideration of each of these factors. AT&T v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 n.8 (3d Cir. 1994).

B.   Probability of Success on the Merits

The Court will first address Plaintiffs' likelihood of success on the merits, assessing each of the

claims alleged in Plaintiffs' Complaint. Plaintiffs allege that Act 39 is facially unconstitutional under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Article III, Sections 26 and 32 of the Pennsylvania Constitution.[3] Specifically, Plaintiffs argue that the statute makes an unconstitutional distinction between liquor license holders in cities of the first class and elsewhere in the Commonwealth. In order to prevail, Plaintiffs must demonstrate that the statute is not rationally related to a legitimate state interest. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985). The challenged category -- licensees who wish to sell off-premises beer in a city of the first class -- is not a suspect or quasi-suspect class. Id. at 439 (listing classes receiving heightened scrutiny as race, alienage, national origin, and sex). Rather, Act 39 differentiates based upon population size of the city and the type of liquor sale transacted. Accordingly, the legislation is:

> presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes.

Id. at 440 (citations omitted). Defendants cite several differences between Philadelphia and smaller Commonwealth cities, including crime rates, as legitimate state interests that are rationally related to the statute. Plaintiffs' arguments that the statute is unnecessary, ill-conceived, and hastily drawn, are

---

[3] Pennsylvania courts evaluate equal protection claims under the Pennsylvania Constitution using the same standards applicable to federal equal protection claims. Harrisburg v. Zogby, 828 A.2d 1079, 1088 (Pa. 2003) ("[T]he meaning and purpose of the Equal Protection Clause of the United States Constitution and the State's prohibition against special laws, are sufficiently similar to warrant like treatment, and contentions concerning the two provisions should be reviewed simultaneously") (citations omitted); Kramer v. Workers' Comp. Appeal Bd., 2005 Pa. LEXIS 2156, *36 (Pa. 2005) ("In evaluating equal protection claims under the Pennsylvania Constitution, [Pennsylvania courts have] employed the same standards applicable to federal equal protection claims").

unpersuasive, as there exists a rational connection between the regulatory structure created by the act and its intended purpose. To prevail on their facial attack, Plaintiff must demonstrate that there exists no rational basis for the Pennsylvania legislature to grant large city governments the power to control specific liquor sales within their city limits, even though the Commonwealth has broad power to control liquor sales generally. The Court finds no support for this proposition, nor have Plaintiffs made a sufficient showing of reasonable likelihood of success on this claim.

The Court heard no evidence or argument in support of Plaintiff's claim that Act 39 contradicts other portions of the Pennsylvania Liquor Code so as to "run[] squarely afoul of the pre-emption doctrine in Pennsylvania . . . ." (Doc. No. 1 ¶ 39.) Plaintiffs cite to no law, and the Court finds none, to support the proposition that the doctrine of preemption applies to equal acts passed by the Pennsylvania legislature, or that the General Assembly lacks authority to revise a legislatively created regulatory scheme, as it did here. Based upon the above, the Court finds that Plaintiffs have failed to demonstrate a reasonable probability of success on the claims in their Complaint. (Doc. No. 1).

Plaintiffs' recently added a claim that the City discriminates against Asian-American license holders, is not before the Court as this stage of the proceedings. As previously noted, in the hearing on Plaintiffs' original facial challenges to Act 39, over objection of Defendants, Plaintiffs produced evidence that raises serious questions of selective enforcement and arbitrary and capricious action by Philadelphia City Council. Defendants received no prior notice of this legal claim prior to hearing and thus produced no direct evidence to refute it. Accordingly, injunctive relief cannot be granted on this

claim absent further proceedings.[4]  Moreover, as explained below, because Plaintiffs have not demonstrated they are likely to suffer irreparable harm in the absence of injunctive relief, Plaintiffs' request for a preliminary injunction must be denied.

### C. Irreparable Harm

Because injunctive relief calls upon the Court's extraordinary powers, it must be exercised sparingly and narrowly and only on a showing of irreparable harm by each party before the Court. Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000).  Irreparable harm represents potential harm that cannot be redressed by a legal or an equitable remedy following a trial, so that the injunction is the only way of protecting the plaintiff.  Instant Air Freight, 882 F.2d at 801.  Mere economic loss does not constitute irreparable harm.  Acierno v. New Castle County, 40 F.2d 645, 654 (3d Cir. 1994).

At hearing on Plaintiff's motion for preliminary injunction, Plaintiffs offered only the testimony of four business owners and Adam Xu, chairman of AALBA.  None of these witnesses were examined concerning the effect Act 39 will have on their businesses.  The only evidence Plaintiffs offered at hearing on this subject is a written declaration provided by Hung Ngo.  (Pl. Ex. 9.)  In this declaration, Mr. Ngo states that the City Council's decision to deny his application for special permit:

> has placed a tremendous hardship upon myself, my family and my business.
> The income derived from the operation of my business is used to support
> myself and my family.  A significant portion of my business's income is derived
> from the sale of malt and brewed beverages for consumption off-premises.  I

---

[4]In such proceedings, the Court would be required to address Defendant-Intervenors's claim that because Plaintiffs may seek relief in the Court of Common Pleas, they cannot establish the absence of a remedy at law and cannot establish irreparable harm.

> invested a substantial amount of money and labor into this business and the
> liquor license and have worked very hard to establish the goodwill of this
> business and license with the surrounding community . . . . I will no longer be
> able to fully utilize my business or my liquor license. I will lose a significant
> portion of my business revenue. As important, I will lose the fine reputation and
> goodwill of my business and liquor license that I worked so hard to obtain.

(Id.) This is the only evidence of irreparable harm Plaintiffs presented at the hearing.[5]

Although Mr. Ngo asserts that without injunctive relief he will "lose a significant portion of [his] business revenue," he does not allege that the loss will be so significant as to damage his business irreparably. Mr. Ngo's declaration indicates that he will still be able to operate his business, but that he will loss a significant portion of his sales. This harm can be redressed by the award of economic damages and is not irreparable. Although the Court can fathom scenarios wherein economic lose can be so great as to result in irreparable harm, Mr. Ngo does not allege such injury and Plaintiffs failed to explore this issue during hearing.

Regarding Mr. Ngo's alleged potential loss of good will, the Third Circuit has identified loss of reputation as irreparable harm in certain cases. See Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998) (In trademark cases, "grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill"); BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 263 (3d Cir. 2000) (injuries to reputation in trade secret cases are "difficult to calculate, and thus money damages are an inadequate remedy"); Fitzgerald v. Mountain Laurel Racing, Inc., 607 F.2d 589 (3d Cir. 1979) ("the nature of harness racing is such that no adequate remedy exists

---

[5] A second declaration by Chang Woo, also alleging "significant" damage to his business, was not admitted into evidence during the hearing. Moreover, even though Messrs. Woo and Ngo testified at the hearing, neither witness was questioned on this issue.

at law to compensate [them] for losses to income and reputation sustained from an unlawful suspension"). However, Mr. Ngo does not articulate in his declaration how the inability to sell take-out beer will result in damages beyond the mere loss of sales. The risk of irreparable harm cannot be speculative, and without any evidence on this point beyond Mr. Ngo's declaration, the Court cannot assume irreparable harm will arise from an otherwise economic injury compensable by damages. Freedom Forge Corp., 204 F.3d at 488.[6]

As Plaintiffs fail to demonstrate a reasonable probability of success on the merits or irreparable harm, the Court need not address the last two factors in the preliminary injunction analysis. Freedom Forge Corp., 204 F.3d at 484 ("A court may not grant this kind of injunctive relief without satisfying these requirements, regardless of what the equities seem to require").

Accordingly, Plaintiffs' motion must be denied.

---

[6] Even should Mr. Ngo demonstrate irreparable harm to his own business, the court questions whether the injury to his business can be imputed to all the other members of AALBA and the remaining named Plaintiffs. The Third Circuit has explained, "the absence of a foundation from which one could infer that all (or virtually all) members of a group are irreparably harmed, we do not believe that a court can enter a mass preliminary injunction." Freedom Forge, 204 F.3d at 487. The parties have not addressed whether irreparable harm can be satisfied as to all Plaintiffs. Plaintiffs offered no evidence that its individual members will suffer any harm that cannot be redressed by the award of economic damages.

**IV.     Order**

**AND NOW**, this 3rd day of November, 2005, for the foregoing reasons, **IT IS HEREBY ORDERED THAT** Plaintiffs' Motion for a Preliminary Injunction (Doc. No. 4) is **DENIED.** The Court's October 31, 2005 Temporary Restraining Order (Doc. No. 31) is **VACATED.**

                                                 S/ Yvette Kane
                                                 Yvette Kane
                                                 United States District Judge

Dated: November 3, 2005